UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARLA SENEFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-04126-JPH-MJD |
| | ) |
| INDIANA UNIVERSITY HEALTH, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Marla Seneff brought this age-discrimination suit after Indiana University Health, Inc. ("IU Health") terminated her employment. IU Health has filed a motion for summary judgment under Federal Rule of Civil Procedure 56(a). Dkt. [36]. For the reasons that follow, that motion is **GRANTED**.

**I.
Facts and Background**

Because IU Health has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

**A. Ms. Seneff's employment with IU Health**

Ms. Seneff started working at Methodist Hospital—which later became part of IU Health—in 1979. Dkt. 39-16 at 4 (Seneff Dep. at 19). She started as a radiology technologist and then worked as an ultrasound technologist. Dkt. 39-16 at 4–5 (Seneff Dep. at 19–20). Around 1994, she became the Team

1

Leader for IU Health's Radiology Ultrasound Department—a position she held until her termination. Dkt. 39-16 at 5–6 (Seneff Dep. at 20–21).

As Team Leader, Ms. Seneff's responsibilities included supervising, training, and disciplining employees. Dkt. 39-16 at 21, 76–79 (Seneff Dep. at 76, 176–179). Her supervisor was Wendy McDougall, the manager of the radiology department. Dkt. 39-16 at 7 (Seneff Dep. at 38); dkt. 39-17 at 2 (McDougall Dep. at 10).

**B. The incident before Ms. Seneff's termination**

On February 22, 2017, Ms. Seneff was helping Michelle Davis, a newer employee, get experience with certain types of exams. Dkt. 39-16 at 24–25 (Seneff Dep. at 79–80). When Ms. Seneff had trouble with a scanning machine, Ms. Davis said that it worked fine the day before. Ms. Seneff responded: "well it doesn't seem to be working today." Dkt. 39-16 at 28–29 (Seneff Dep. at 84–85). Upset by that comment, Ms. Davis went to a bathroom and cried. Dkt. 39-18 at 40–41 (Davis Dep. at 40–41).

Two other employees told Ms. McDougall that Ms. Davis was upset. Dkt. 39-17 at 28–29 (McDougall Dep. at 60–61). Ms. McDougall found Ms. Davis and asked her what happened. Dkt. 39-17 at 29 (McDougall Dep. at 61). Ms. McDougall then met with Ms. Seneff. Ms. McDougall yelled at Ms. Seneff, told her that Ms. Davis was upset, and told her to go home—with no opportunity to explain. Dkt. 39-16 at 33–34, 60 (Seneff Dep. at 89–90, 128).

As she prepared to leave, Ms. Seneff saw Ms. Davis again and apologized twice, then said that she was going home. Dkt. 39-16 at 36–40 (Seneff Dep. at

92–96). This conversation also upset Ms. Davis, causing her to cry again. [Dkt. 39-16 at 38](Seneff Dep. at 94); [dkt. 39-17 at 33](McDougall Dep. at 74).

Ms. McDougall then called and told human resources representative Darrell Daniel what happened. [Dkt. 39-17 at 34](McDougall Dep. at 75–77). She followed that call with an email asking for advice about "the appropriate number of days for suspension for an employee incident that happened." [Dkt. 39-14](). Mr. Daniel recommended Ms. Seneff's termination. [Dkt. 39-17 at 39](McDougall Dep. at 81). Ms. McDougall went to her direct supervisor, Todd Stanley, and tried to prevent Ms. Seneff's termination but was unsuccessful. [Dkt. 39-17 at 41](McDougall Dep. at 83, 86–87, 89). Ultimately, Mr. Daniel, Mr. Stanley, and IU Health COO Parveen Chand approved Ms. Seneff's termination. [Dkt. 39-17 at 41–44](McDougall Dep. at 83, 86–87, 89). IU Health terminated Ms. Seneff when she returned to work on February 27, 2017. [Dkt. 39-16 at 52](Seneff Dep. at 113–14).

**C. Ms. McDougall's comments about Ms. Seneff and other employees**

The day before the incident between Ms. Seneff and Ms. Davis, Ms. Seneff and Ms. McDougall attended a supervisor meeting. [Dkt. 39-16 at 42](), 64 (Seneff Dep. at 98, 133). Ms. McDougall said in a mean tone that she missed Ms. Seneff's birthday—"the big one"—and that maybe Ms. Seneff could retire early. [Dkt. 39-16 at 64](Seneff Dep. at 133). Ms. Seneff had turned sixty the month before. [Dkt. 39-17 at 20](McDougall Dep. at 50).

Ms. McDougall had also made comments about the retirement status and age of other employees. Twice in 2016, Ms. McDougall asked Ms. Seneff

3

about other employees, wondering why they didn't retire. Dkt. 39-16 at 70, 83 (Seneff Dep. at 160, 183). And in 2014, Ms. McDougall told Ms. Seneff about the termination of an older employee, commenting: "you know how older women can be." Dkt. 39-16 at 46–47 (Seneff Dep. at 103, 105).

### D. The termination of former IU Health employee B.M.

Ms. Seneff had supervised an ultrasound technologist, B.M., and helped address concerns about B.M.'s performance. B.M. came to work late, struggled to keep up with the work, and would disappear during her shift. Dkt. 39-16 at 76 (Seneff Dep. at 176). Later, a nurse complained that B.M. was intoxicated at work, leading to IU Health giving her time off to seek substance-abuse counseling. Dkt. 39-16 at 77–79 (Seneff Dep. at 177–79). IU Health gave B.M. three formal corrective actions before eventually terminating her in February 2017. Dkt. 39-16 at 79–80 (Seneff Dep. at 179–80). B.M. was younger than forty when IU Health terminated her employment. Dkt. 39-16 at 80 (Seneff Dep. at 180).

### E. Procedural history

Ms. Seneff brought this lawsuit in November 2017, alleging that she was terminated because of her age in violation of the Age Discrimination in Employment Act ("ADEA"). Dkt. 1; *see* 29 U.S.C. § 621 *et seq.* IU Health moved for summary judgment. Dkt. 36.

## II.
## Applicable Law

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." Id. at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

The ADEA prohibits employers from, among other things, terminating a protected individual's employment based on age. 29 U.S.C. §§ 623(a)(1); 631(a); *see Carson v. Lake County*, 865 F.3d 526, 532 (7th Cir. 2017). To prevail on an ADEA claim, a plaintiff must "prove, by a preponderance of the evidence, that age was the 'but-for' cause of" her termination. *Carson*, 865 F.3d at 532. That can be done either with "evidence that her employer took an adverse action against her because of her age," or through the *McDonnell Douglas* burden-shifting framework. Id. at 533 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).[1]

---

[1] Ms. Seneff's brief identifies seven "disputed material facts." Dkt. 39 at 3. Most of these—for example, whether IU Health "sought to discipline Seneff . . . because of [her] age"—recite conclusions rather than specific disputed facts with supporting citations. *Id.*; see Fed. R. Civ. P. 56(c)(1)(A); *Sommerfield v.*

5

### A. Direct or circumstantial evidence

IU Health argues that Ms. Seneff has not identified evidence from which a jury could infer that she was terminated because of her age. Dkt. 37 at 23. Ms. Seneff responds that a jury could infer age discrimination from several of Ms. McDougall's comments. Shortly before the termination, Ms. McDougall made a comment about Ms. Seneff turning sixty years old and asked if she was considering retirement. Dkt. 39-16 at 64 (Seneff Dep. at 133). Ms. Seneff argues that this comment is evidence of discrimination because it made her fear age-based hostility and was made shortly before her termination. Dkt. 39 at 20–21. Ms. Seneff also argues that Ms. McDougall had made similar comments to and about other employees. Dkt. 39 at 19–20. IU Health dismisses Ms. McDougall's comments as isolated comments or stray remarks insufficient to support a finding of age discrimination. Dkt. 37 at 22.

To create a triable issue of fact, evidence "must point directly" to age discrimination. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010) (quoting *Adams v. Wal-Mart Stores*, 324 F.3d 935, 939 (7th Cir. 2003)). Comments may meet that standard if they were made by the decisionmaker around the time of the decision and referred to the challenged employment action. *Mach v. Will Cty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). Here, Ms. McDougall's statements from 2014 and 2016 about "older women" and

---

*City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." (citation omitted)). The Court has considered all facts that Plaintiff has cited as precluding summary judgment.

questioning why certain employees had not yet retired "are not probative of discrimination." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 605 (7th Cir. 2012) (citing *Markel v. Board of Regents*, 276 F.3d 906, 910–11 (7th Cir. 2002); *Kennedy v. Schoenberg, Fisher, & Newman, Ltd.*, 140 F.3d 716, 724 (7th Cir. 1998)). They were not "contemporaneous with the discharge" because they were not made within two months of Ms. Seneff's termination. *Id.* And they were not "causally related to the discharge decision-making process" because they were not made in a setting related to Ms. Seneff's discipline or termination. *Id.*

While Ms. McDougall's comment about Ms. Seneff's birthday and early retirement occurred less than a week before the termination of Ms. Seneff's employment, it is also insufficient to support a finding of age discrimination. Retirement references are not "inevitable euphemism[s] for old age" and may be innocuous in context. *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 720–22 (7th Cir. 2018). They are therefore not evidence of age discrimination when an alternative explanation supports the employment action. *Fleishman*, 698 F.3d at 606 (citing *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997) ("This was therefore not a situation in which an employee in the protected age group was hounded about retirement despite evidence of adequate performance.")).

Here, IU Health has articulated a nondiscriminatory reason for terminating Ms. Seneff's employment. IU Health believed that Ms. Seneff had treated a subordinate, Ms. Davis, inappropriately and in violation of IU Health's

7

Code of Conduct and Harassment and Workplace Violence Prevention policy during two separate interactions on the same morning. *See* dkt. 38-4 at 6–19; *cf. Fleishman,* 698 F.3d at 606 (finding that a termination due to performance concerns did "not create any inference" that it was because of the employee's age); *Van Antwerp,* 627 F.3d at 297–99. After Ms. McDougall reported the incident between Ms. Seneff and Ms. Davis to IU Health human resources, Darrell Daniel (a human resources representative), Todd Stanley (Ms. McDougall's direct supervisor), and Parveen Chand (IU Health's COO) approved Ms. Seneff's termination. Dkt. 39 at 13 (citing dkt. 39-17 at 41–44 (McDougall Dep. at 83, 86–87, 89)).

Ms. Seneff's evidence as a whole thus consists of an "isolated comment or 'stray remark'" without a causal connection to her termination. *See Fleishman,* 698 F.3d at 605 (finding no evidence of discrimination when comments were either not contemporaneous or had no connection to the termination decision). This is insufficient to permit a reasonable factfinder to conclude that IU Health terminated Ms. Seneff's employment because of her age. *Mach,* 580 F.3d at 499–500.[2]

### B. *McDonnell Douglas* burden shifting

IU Health argues that Ms. Seneff's claim also fails under the *McDonnell Douglas* burden-shifting analysis. "Under *McDonnell Douglas*, where a plaintiff

---

[2] For this reason, two other disputed facts—whether Ms. Seneff had an opportunity to give her side of the story, and whether Ms. McDougall was a "decisionmaker" in the termination—do not create triable issue for a jury. *See Celotex Corp,* 477 U.S. at 322–23 (noting that a lack of proof on one essential element "necessarily renders all other facts immaterial").

8

establishes a prima facie case for discrimination, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the challenged employment action. If the employer does so, the burden shifts back to the plaintiff to prove pretext." *Carson,* 865 F.3d at 535–36.

To establish a prima facie case, Ms. Seneff must "come forward with evidence showing that '(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably.'" *Id.* (quoting *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016)). IU Health argues that Ms. Seneff cannot show that she was meeting its reasonable expectations or that any similarly situated employee was treated more favorably. Ms. Seneff responds that her performance evaluations demonstrate she was meeting IU Health's legitimate expectations and that a similarly situated employee was treated more favorably and thus may be used as a "comparator" to support an inference of discrimination.

But Ms. Seneff has not identified a comparator who is similarly situated enough to allow a jury to infer that IU Health terminated her because of her age. The similarly situated inquiry asks, "are there enough common features between the individuals to allow a meaningful comparison"? *Coleman v. Donahoe,* 667 F.3d 835, 841 (7th Cir. 2012); *see Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009). "The proposed comparator must be similar enough to permit a reasonable juror to infer, in light of all the circumstances,

9

that an impermissible animus motivated the employer's decision." *Coleman, 667 F.3d at 841*. This is usually a fact question, but summary judgment is appropriate when no reasonable factfinder could find that plaintiffs have met their burden. *Id.* at 846–47.

IU Health argues that there is no evidence of a younger, similarly situated employee. Dkt. 37 at 18–19. Ms. Seneff proposes as a comparator an ultrasound technologist, B.M., who was younger than forty and received formal progressive discipline for misconduct before being terminated—unlike Ms. Seneff, who was promptly fired after the incident with Ms. Davis. Dkt. 39 at 28–29.

But to be a comparator, the other employee "must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles." *Senske,* 588 F.3d at 510. While the Court must conduct a "flexible, common-sense" examination of all relevant factors, "[i]n the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct" without circumstances that distinguish the employer's treatment. *Id.* at 846-847 (citation and quotations omitted). Here, Ms. Seneff and the proposed comparator were not subject to the same standards and did not engage in similar conduct.

Regarding "same standards," as a Team Leader, Ms. Seneff was a supervisor while B.M. was not. *See Coleman,* 667 F.3d at 849 ("[A] would-be comparator's professional role may be so different from the plaintiff's as to

10

render the comparison effectively useless." (quotation and citation omitted)). That supervisory role gave Ms. Seneff responsibility over her employees' work quality, evaluations, scheduling, training, and discipline. Dkt. 38-1 at 5–6 (Seneff Dep. at 23–27). In turn, IU Health "was entitled to"—and did—hold Ms. Seneff to higher expectations, including expectations governing interactions with subordinate employees. Dkt. 39-17 at 39 (McDougall Dep. at 81); *Senske,* 588 F.3d at 510 (finding that lower-ranking employees were not comparators because the employer "was entitled to hold [them] to lower standards"). Ms. Seneff and B.M. thus were not subject to the same employee standards.

Regarding "similar conduct," the "critical question" is whether the plaintiff and the proposed comparator engaged in conduct of similar seriousness. *Coleman,* 667 F.3d at 848, 851. Ms. Seneff made a subordinate employee cry twice. B.M. did not meet performance expectations, missed work, disappeared at work, worked while intoxicated, and struggled with substance abuse. Dkt. 39-16 at 76–80 (Seneff Dep. at 176–80). Ms. Seneff argues that B.M.'s misconduct was "worse" than her own conduct preceding her termination, dkt. 39 at 29, but this misses the point. The standard is whether their misconduct is "*sufficiently analogous.*" *Kuttner v. Zaruba,* 819 F.3d 970, 976 (7th Cir. 2016).

It's not. The issue in Ms. Seneff's situation was how she treated a subordinate—something unrelated to B.M.'s misconduct since B.M. was not a supervisor and had none of the accompanying responsibilities. Comparing wholly unrelated and categorically dissimilar misconduct cannot satisfy this

11

part of the analysis.  *See Kuttner,* 819 F.3d at 976; *Patton v. Indianapolis Pub. Sch. Bd.,* 276 F.3d 334, 338 (7th Cir. 2002) ("[T]here is no reason to equate sexual harassment allegations . . . with allegations about mismanagement of the transportation system of the entire school district."); *cf. Skiba,* 884 F.3d at 724.  The differences are too great to imply intentional discrimination.  *See Bates v. City of Chicago,* 726 F.3d 951, 955 (7th Cir. 2013).

Ms. Seneff cannot use B.M. as a "comparator" because they were not subject to the same standards and did not engage in similar conduct.  They share too few common factors "to allow for a meaningful comparison in order to divine whether intentional discrimination was at play."  *Bates,* 726 F.3d at 955 (citation and quotation omitted).  Therefore, any differences between how IU Health handled the discipline of B.M. and how IU Health handled the discipline of Ms. Seneff cannot support an inference that her age was the real reason IU Health terminated Ms. Seneff's employment.  No reasonable factfinder could find that Ms. Seneff met her burden on this issue, *Coleman,* 667 F.3d at 846–47, so no triable issue of fact exists under the *McDonnell Douglas* framework.[3]

## IV.
## Conclusion

IU Health's motion for summary judgment, dkt. [36], is **GRANTED**.  Final judgment will issue in a separate entry.

**SO ORDERED.**

---

[3] Because Ms. Seneff has not shown the comparator element of her prima facie case, the Court "need not concern" itself with burden shifting or pretext, or with the other elements of the prima facie case.  *Carson,* 865 F.3d at 536; *accord Fleishman,* 698 F.3d at 609.

Date: 5/3/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Laurie E. Martin
HOOVER HULL TURNER LLP
lmartin@hooverhullturner.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

Christopher S. Stake
DELANEY & DELANEY LLC
cstake@delaneylaw.net

Kristofer Wilson
HOOVER HULL TURNER LLP
kwilson@hooverhullturner.com